UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-23267-GAYLES

**RENEL RICHEMOND**,

    Plaintiff,

v.

**UBER TECHNOLOGIES, INC.**,

    Defendant.

_____/

**ORDER**

**THIS CAUSE** comes before the Court on Defendant's Motion to Compel Arbitration [ECF No. 11]. The Court has reviewed the Motion, Plaintiff's Response [ECF No. 15], Defendant's Reply [ECF No. 19], and the record. For the reasons that follow, the Court grants the Motion.

**I.      BACKGROUND**

Plaintiff Renel Richemond ("Richemond") has been working for Defendant Uber Technologies, Inc. ("Uber"), since October 2014. Richemond contends in his Complaint that Uber failed to comply with the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by not properly paying for overtime hours worked [ECF No. 1-2, ¶¶ 12–13]. Richemond further alleges that Uber "has been engaging in a pattern and practicing of misclassifying employees as independent contractors," which has led to Uber's "fail[ure] to provide proper compensation to its employees including reimbursement of gasoline and vehicle maintenance." [*Id.* ¶ 14].

Uber argues that Richemond's "claims are subject to arbitration and dismissal pursuant to the Federal Arbitration Act" ("FAA"), 9 U.S.C. § 1 *et seq.*, based on the "valid arbitration agreement covering his claims." [ECF No. 11 at 2]. Richemond, in turn, argues that the arbitration provisions violate the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, and are unenforceable under the FAA.

## II.   THE AGREEMENT

During the course of his employment with Uber, Richemond acceded to the terms of various contracts through his mobile device: the "Raiser Software Sublicense Agreement June 21 2014" ("June 2014 Agreement") [ECF No. 11-2 at 13–30]; the "Partner Agreement November 10 2014" ("November 2014 Agreement") [*Id.* at 31–50]; and the "Technology Services Agreement" ("December 2015 Agreement"). [ECF No. 19-1 at 4–24]. In order to accept these agreements on the mobile application used for employment with Uber, the user is required to confirm that he has "reviewed all the documents" and that he "agree[s] to all" of them [ECF No. 11-2 at 4–7, ¶¶ 9, 14]. The user then confirms a second time that he has reviewed and agrees to the documents, this time following a notice in boldface all-capital text. [*Id.* at 12].

Uber's business records reflect that Richemond accepted the June 2014 Agreement on October 16, 2014, the November 2014 Agreement on April 1, 2015, and the December 2015 Agreement on December 12, 2015. [*Id.* at 52]. Each of these agreements contains an Arbitration Provision, together with an option to opt out of the arbitration requirement within thirty days of accepting the terms of the agreement. [*Id.* at 6–7, ¶¶ 13–14]. The opt-out clause is prominently displayed in boldface text, indicating that the user can opt out either by electronic mail, U.S. Mail, "any nationally recognized delivery service," or hand delivery. [*Id.* at 28, 49–50]; [ECF

No. 19-1 at 24]. Richemond did not opt out of the Arbitration Provision contained in any of the agreements within thirty days of acceptance. [ECF No. 11-2 at 6–7, ¶¶ 13–14].

The agreements advise users in boldface all-capital text that "**WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT BUSINESS DECISION**" and that the user "**SHOULD TAKE REASONABLE STEPS TO CONDUCT FURTHER RESEARCH AND TO CONSULT WITH OTHERS – INCLUDING BUT NOT LIMITED TO AN ATTORNEY – REGARDING THE CONSEQUENCES**" of agreeing to the Arbitration Provision. [*Id.* at 25, 46]; [ECF No. 19-1 at 19–20].

Also in boldface text, the agreements state as follows:

> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.**

[ECF No. 11-2 at 25, 46].[1]

The subsequent paragraph provides the language of the Delegation Clause:

> Such disputes include without limitation disputes arising out of or relating to *interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision* or any

---

[1] The language in the December 2015 Agreement is slightly expanded as follows:

> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration, with the exception of proceedings that must be exhausted under applicable law before pursuing a claim in a court of law or in any forum other than arbitration. Except as it otherwise provides, this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.**

[ECF No. 19-1 at 20].

portion of the Arbitration Provision. *All such matters shall be decided by an Arbitrator and not by a court or judge*.

[*Id.* at 25, 46–47] (emphasis added).[2]

The agreements provide explicitly that "this Arbitration Provision also applies, without limitation, to disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with the Company, including termination of the relationship." [*Id.* at 25, 47].[3] And, relevant to the instant case, the agreements provide that "[t]his Arbitration Provision also applies, without limitation, to disputes regarding any city, county, state or federal wage-hour law, . . . expense reimbursement, . . . and claims arising under the . . . Fair Labor Standards Act." [*Id.*]; [ECF No. 19-1 at 20].

### III.   LEGAL STANDARD

The FAA provides that written contractual arbitration agreements involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA places arbitration agreements on equal footing with all other contracts and sets forth a clear presumption—'a national policy'—in

---

[2] The language in the December 2015 Agreement is slightly modified as follows:

> Except as provided in Section 15.3(v), below, regarding the Class Action Waiver, such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge. However, as set forth below, the preceding sentences shall not apply to disputes relating to the interpretation or application of the Class Action Waiver or PAGA Waiver below, including their enforceability, revocability or validity.

[ECF No. 19-1 at 20].

[3] The language in the December 2015 Agreement slightly modifies the text to read that "this Arbitration Provision also applies, without limitation, to all disputes between You and the Company or Uber . . . arising out of or related to this Agreement and disputes arising out of or related to your relationship with the Company, including termination of the relationship." [ECF No. 19-1 at 20].

favor of arbitration." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). "Arbitration provisions will be upheld as valid unless defeated by fraud, duress, unconscionability, or another generally applicable contract defense." *Id.* (citation and internal quotation marks omitted).

Under the FAA, a party may petition the district court to enforce a written arbitration agreement. 9 U.S.C. § 4. Where the court finds a valid arbitration agreement between the parties, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* The court is authorized to stay the trial of the action until such time as the issues referable to arbitration have been decided. *Id.* § 3. "Importantly, parties may agree to commit even threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable. The Supreme Court has upheld these so-called 'delegation provisions' as valid and explained that they are severable from the underlying agreement to arbitrate." *Parnell*, 804 F.3d at 1146 (citations omitted). Unless a party directly challenges a delegation provision, the court "must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010). However, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Parnell*, 804 F.3d at 1147 (citation and internal quotation marks omitted).

IV.   ANALYSIS

Richemond argues that the arbitration provisions of his agreements with Uber are unenforceable under the FAA, particularly because they violate the NLRA. [ECF No. 15]. As discussed above, the agreements between Richemond and Uber provide that any dispute

5

regarding the "enforceability, revocability[,] or validity of the Arbitration Provision or any portion of the Arbitration Provision . . . shall be decided by an Arbitrator and not by a court or judge." [ECF No. 11-2 at 25, 46–47]. This delegation provision explicitly provides that an Arbitrator shall decide Richemond's claims regarding the enforceability of his agreements with Uber, and it divests this Court of the ability to make that determination at this time. If the Arbitrator decides that any portion of the Arbitration Provision is invalid, those matters may then be tried before this Court.

The Court finds that Richemond clearly acceded to the terms of his agreements with Uber. First, Richemond had ample opportunity to review the terms of the agreements before accepting them on the mobile device. Second, the agreements themselves provided prominent markers to emphasize to Richemond the gravity of the Arbitration Provision: by alerting him to consult with an attorney in boldface all-capital text, by highlighting the text that provided for binding arbitration, and by requiring Richemond to agree to the terms of the agreement twice on his mobile device before permitting him to begin the terms of his contract. And third, Richemond did not opt out of the Arbitration Provision during the allotted thirty-day period following acceptance of each of the three agreements to which he assented. Accordingly, this Court finds that there is "clear and unmistakable evidence" that Richemond "agreed to arbitrate arbitrability." *See Parnell*, 804 F.3d at 1147; *see also Sena v. Uber Techs. Inc.*, No. CV-15-02418-PHX-DLR, 2016 WL 1376445, at *4 (D. Ariz. Apr. 7, 2016) (analyzing identical delegation clause and concluding that "[g]iven the plain language of the Delegation Clause, the Court finds that the parties clearly and unmistakably intended to arbitrate questions of

arbitrability"), *reconsideration denied*, No. CV-15-02418-PHX-DLR, 2016 WL 4064584 (D. Ariz. May 3, 2016).

Additionally, Plaintiff does not directly challenge the validity of the delegation provision of his agreements, thus providing another basis on which this Court should grant Defendant's motion. *See Suarez v. Uber Techs., Inc.*, No. 8:16-CV-166-T-30MAP, 2016 WL 2348706, at *4 (M.D. Fla. May 4, 2016) ("Notably, Plaintiffs do not *directly* challenge the validity of the delegation provision. As such, Defendant's motion should be granted on this basis alone and adjudication of Plaintiffs' attacks on the Arbitration Provision should be left to the arbitrator because it is clear and unmistakable that the parties agreed to arbitrate arbitrability."), *appeal filed*, No. 16-13263 (11th Cir. June 6, 2016). However, even if the Court were to analyze the validity of the Arbitration Provision, the Court adopts the reasoning in *Suarez* and finds that under Florida law, the Arbitration Provision is not procedurally or substantively unconscionable. *See id.* at *4–5 (finding no procedural unconscionability because the plaintiffs "had the absolute right to opt out of the Arbitration Provision" and no substantive unconscionability because the Arbitration Provision's fee-splitting clause does not "render[] the cost of arbitration prohibitively or unfairly expensive" and because "the law is clear that the waiver of class/collective claims cannot render the Arbitration Provision unconscionable") (citations omitted); *accord Rimel v. Uber Techs., Inc.*, No. 6:15-cv-2191-Orl-41KRS, 2016 WL 6246812 (M.D. Fla. Aug. 4, 2016) (magistrate judge recommendation that the district court compel arbitration in a substantially similar case, finding that the arbitration provision was not unconscionable under Florida law).

As an additional matter, this Court notes that the NLRA applies only to an "employee," which the NLRA defines to "not include . . . any individual having the status of an independent

7

contractor." 29 U.S.C. § 152(3). The parties' June 2014 Agreement provides that "[y]ou represent that you are an *independent contractor* engaged in the independent business of providing the transportation services described in this Agreement," [ECF No. 11-2 at 16] (emphasis added), and their November 2014 Agreement provides that "the relationship between the parties under this Agreement is solely that of *independent contractor*," [*Id.* at 43] (emphasis added). Richemond argues that Uber misclassifies him as an "independent contractor." [ECF No. 1 at ¶ 14]. However, pursuant to the Arbitration Provision, the Arbitrator is responsible for deciding the threshold issue of whether Richemond's relationship with Uber is that of an employee or an independent contractor. *See* [ECF No. 11-2 at 25, 47] (stating that "this Arbitration Provision also applies, without limitation, to . . . disputes arising out of or related to your relationship with the Company, including termination of the relationship").[4]

## V. CONCLUSION

Because the Court finds that the agreements between Richemond and Uber require that an Arbitrator, and not this Court, decide the threshold issue of enforceability and, if the Arbitration Provision is valid and enforceable, adjudicate Richemond's FLSA claims, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Compel Arbitration **[ECF No. 11]** is **GRANTED**. The parties shall proceed to arbitration within thirty (30) days of this Order. This action shall be **STAYED** until such time as the parties' arbitration proceedings have been completed. The parties shall file a status report with this Court within ten (10) days of the

---

[4] The Court further notes that the Supreme Court recently granted certiorari in three cases that address the issue of whether an agreement between an employer and an employee that requires resolution of disputes through individual arbitration and prohibits class and collective proceedings is enforceable under the FAA and the NLRA. Order Granting Petitions for Writ of Certiorari, *Epic Systems Corp. v. Lewis*, Nos. 16-285, 16-300 & 16-307 (U.S. Jan. 13, 2017), 2017 WL 125664.

termination of the arbitration proceedings. This action is **CLOSED** for administrative purposes, and any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 27th day of January, 2017.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE